Jerod Gunsberg, SBN 260219
Law Offices of Jerod Gunsberg
643 S. Olive Street, Suite 525
Los Angeles, CA 90014
P#: 323-633-3423
F#: 310-496-3011
E: Jgunsberg@gunsberglaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | **CASE NO. CR 17-00720-SVW** |
| Plaintiff, | **DEFENSE SENTENCING MEMORANDUM** |
| v. | |
| ANTHONY SCOTT LLOYD | |
| Defendant | |

Defendant Anthony Scott Lloyd does not come before this court to make excuses or minimize the conduct which lead him to pleading guilty in this case. He deeply regrets and accepts unconditional blame for placing a threatening phone call to Congresswoman Maxine Waters's office, the offense for which he now stands convicted.

While it does not excuse Mr. Lloyd's actions, his impulsive conduct was brought on by untreated mental illness and substance abuse.  Since his arrest and indictment in this case, Mr. Lloyd has taken significant, meaningful steps to rectify his life. He has been fully cooperative with law enforcement during their investigation of this case, compliant with the terms of his pretrial release during the pendency of this case, and fully engaged with court-ordered mental health counseling, substance abuse treatment. He is neither a risk for recidivism nor a danger to the community.

For these reasons, Mr. Lloyd joins in the Government and the United States Probation

*DEFENSE SENTENCING MEMORANDUM - 1*

Office's recommendation that a three-year non-custodial probationary sentence, to include a period of location monitoring and continued mental health counseling, is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. 3552(a) due, in part, to the "nature and circumstances of the offense and history and characteristics of the defendant." 18 U.S.C. 3553(a)(1).

Additionally, for the reasons set forth below, Mr. Lloyd joins the Government's objection to the USSC 3A1.2(b) six-level advisory sentencing guideline increase.

## I.      CIRCUMSTANCES OF THE OFFENSE AND PROCEDURAL BACKGROUND

Per a written agreement with the Government, on April 16, 2018 Defendant Lloyd pleaded guilty to violating one count of threatening a United States Official in violation of 18 U.S.C. 115(a)(1)(B).  Mr. Lloyd and the Government agreed to a Base Offense Level 12 with a four-point reduction as this was a single instance with little deliberation. The Government further agreed, at the time of sentencing, to recommend a two or three-point reduction as authorized by U.S.S.G. 3E1.1.

The Government further reserved the right to argue for a six-point enhancement on the grounds that the victim is a government officer and the offense was motivated by such status. As of this writing, it is Mr. Lloyd's understanding that the Government will not seek this enhancement and will object to the USPO's calculation of this increase.

Mr. Lloyd joins in the Government's objection on the grounds that Mr. Lloyd's Threat against Ms. Waters was not motivated by her official status. Mr. Lloyd's conduct was motivated by his misguided and drug-induced belief that Ms. Waters was threatening the life of the President of the United States. Her status as a member of Congress was not a motivating

*DEFENSE SENTENCING MEMORANDUM - 2*

factor in Mr. Lloyd making the threat.

There was no agreement as to Defendant Lloyd's criminal history points and no agreement as to the amount of a fine or whether a fine shall be imposed.

As to the circumstances of the offense, Defendant Lloyd agrees with the factual basis in the plea agreement and the PSR.

## II.    THE DEFENDANT'S BACKGROUND AND THE NATURE OF THE OFFENSE - APPLICATION OF § 3553(a) FACTORS

Core principles in sentencing have long been resolved by the Supreme Court in United States v. Booker, 125 S. Ct. 738, (2005), *Gall v. United States*, 128 S.Ct. 586, 591 (2007) and Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558 (2007.))  "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890, 891 (2009). Courts then are to consider the factors set forth in 18 U.S.C. § 3553(a).  Booker also made it clear that the fact "[t]hat a factor is discouraged or forbidden under the advisory guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines." *United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006).   Moreover, factors justifying a sentence outside the guideline are no longer required to be "extraordinary."  *Gall*, 168 S.Ct. at 595 (emphasis added.)  "One theme runs through the Supreme Court's recent sentencing decisions*: [United States v.] Booker* [543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),] empowered district courts, not appellate courts .... [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing.... *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (internal citation omitted.).

In fashioning the appropriate sentence, this Court "may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless

*DEFENSE SENTENCING MEMORANDUM - 3*

otherwise prohibited by law."  18 U.S.C. § 3661.   Under this paradigm, this Court may freely consider any factor relevant to Mr. Lloyd's background including, but not limited to, his childhood, his education, his close family ties, his employment history, his mental and emotional health, and his age, because these are factors that make up his "history and characteristics" 18 U.S.C. §3553(a)(1).

In sum, in every case, a sentencing court must now consider all of the Section 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

Mr. Lloyd path to the defendant's chair in this case is not one littered with a life of violent criminal conduct. Mr. Lloyd has zero criminal history points (PSR 39). Unfortunately, Mr. Lloyd suffers from alcohol and drug addiction and mental illness.  Mr. Lloyd's mental health issues trace back to the sixth grade when he first sought mental health counseling during his parents' divorce. At approximately age 14, he was referred to a residential treatment program for mental health treatment and substance abuse issues. He spent a total of 23 months in two separate programs (PSR  74-75). Except for outpatient cognitive therapy shortly after his release from residential treatment, Mr. Lloyd's illness and addiction continued untreated until shortly after the death of his father in March of 2011 (PSR 78). Mr. Lloyd then sought the treatment of a psychiatrist who diagnosed Mr. Lloyd with Panic Disorder, Major Depression, Anxiety and Bipolar II. Mr. Lloyd was prescribed varying combinations of six different antidepressant and psychotropic medications (PSR 79). Notably, Mr. Lloyd became addicted to Xanax during this period. At the peak of his addiction Mr. Lloyd was consuming up to 10mg of Xanax per day. (PSR 80(c), PSR 81). In 2013, in an effort to stop using Xanax, Mr. Lloyd contacted a physician to assist in weaning him off the medication. In 2014, Mr. Xanax successfully stopped using

*DEFENSE SENTENCING MEMORANDUM - 4*

Xanax (PSR 82). However, he remained untreated from 2014 until the time of his arrest. During this period, he was self-medicating with alcohol and highly potent marijuana and marijuana related substances (PSR 83).

In addition to his addiction and mental health issues, Mr. Lloyd suffered significant personal traumas over the past years which exacerbated his condition. In 2006, he learned that he was not the biological father of the child he believed to be his daughter and was raising as his own, he cut ties with the girl and her mother. (PSR 61) In 2007, Mr. Lloyd's mother passed away. In 2011, Mr. Lloyd's father passed away. (PSR 61)

In 2007, Mr. Lloyd began living with his grandmother Anna Marie Zuanich who, at the time, was suffering from breast cancer. Mr. Lloyd was her primary caregiver while she recovered and assists her to this day (PSR 62).

In the months leading up to the incident at issue in this case, Mr. Lloyd used potent marijuana and marijuana related substances from the moment he woke in the morning until the time he went to sleep at night. He suffered from severe depression. Additionally, Mr. Lloyd was a voracious consumer of political news online, on television and on radio. The commentators he followed is commonly viewed as "right wing", unconditionally supportive of President Trump, and fiercely critical of anyone who opposed President Trump's policies.

The triggering incident was based on an October 13, 2017 speech Ms. Waters delivered at a charity event. In this speech, she remarked, in passing, that she was inspired to "go and take Trump out tonight." In the ensuing weeks after this remark, the political commentators Mr. Lloyd followed construed Ms. Waters's remark as a threat against President Trump. These media outlets isolated her statement on video and audio and stripped it of any additional context. These broadcasts spent a good deal of time expressing outrage at Ms. Waters. The commentators

*DEFENSE SENTENCING MEMORANDUM - 5*

Mr. Lloyd listened to put forth the idea that Ms. Waters was calling for the assassination of President Trump. Mr. Lloyd, in that moment, adopted that view (PSR 18).

Mr. Lloyd, in the throes of addiction and depression, did not stop to further analyze the context of Ms. Waters's remark or the agenda of these political commentators. He spontaneously and impulsively called Congresswoman Waters's office and left the threatening voicemail. Mr. Lloyd did not plan what he was going to say, nor in his diminished state did he appreciate the consequences of what he was saying.[1]

The FBI initially contacted Mr. Lloyd On October 27, 2017. Five days after Mr. Lloyd's telephonic contact with Congresswoman Waters's office. Although heavily intoxicated on potent marijuana during his interview with the FBI at his home, Mr. Lloyd was fully cooperative. Law enforcement found no evidence of firearms or any other weapons in Mr. Lloyd's home or in his possession. Nor did they find evidence of Mr. Lloyd planning any harm to Congresswoman Waters. (PSR 23). Mr. Lloyd was arrested on or about November 13, 2017 at his residence. Again, he was fully cooperative with the FBI and there was no evidence of Mr. Lloyd planning any harm to Congresswoman Waters (PSR 24).

---

[1] It is notable that part of Mr. Lloyd's voicemail to Congresswoman Waters involved a slur against the LGBTQ community. Mr. Lloyd's late father was homosexual. Mr. Lloyd was well aware of this and was quite close with his father (PSR 50, 55) . This fact further underscores that Mr. Lloyd's conduct was rooted in mental health issues rather than deep-seated animus towards any particular group.

*DEFENSE SENTENCING MEMORANDUM - 6*

Mr. Lloyd has complied fully with the terms of pretrial release including completing a 20-week substance abuse counseling program as well as weekly mental health counseling. Mr. Lloyd has found both the substance abuse counseling and the mental health counseling helpful (PSR 10,86, 95).

In the weeks prior to Mr. Lloyd placing a threat to Congresswoman Waters, Mr. Lloyd himself was the victim of a threat by someone known as David Smith. Mr. Lloyd and Smith did not know each other but became involved in a heated online debate on Mr. Smith's YouTube page. Mr. Smith responded by posting a video directed at Mr. Lloyd in which Mr. Smith racked a shotgun and gave an indication that he had a general idea of where Mr. Lloyd lived.

As reported to the FBI, Mr. Lloyd considered his options which included engaging in self-defense, pro-actively seeking out Mr. Smith or reporting the threat to the police. Mr. Lloyd chose the correct course of action and filed a report with the Los Angeles Police Department (PSR 17(a)-(b))

This stress, in addition to Mr. Lloyd's myriad other issues, sent Mr. Lloyd on a further downward spiral. Indeed, the fact that Mr. Lloyd victimized another person whom he did not know by directing a threat, shortly after he was similarly victimized by someone else is an issue that Mr. Lloyd is currently grappling with and addressing in his psychological counseling.

After his arrest, Mr. Lloyd submitted a full forensic psychiatric examination from Dr. Nathan Lavid, MD. In summary from Dr. Lavid's comprehensive report:

"Mr. Lloyd suffers from depression and addiction. At the time of the alleged offense with his threatening statements, he was not receiving treatment for his depression and in the throes of addiction. These threats are a function of his untreated depression and addiction rather than of violence. He does report remorse over what occurred. He is currently abstinent from drugs and alcohol and receiving mental health treatment. His current risk of recidivism is low and will be further decreased by continued abstinence from drugs and alcohol as well as mental health treatment. His prognosis is now good." (PSR 86, and

*DEFENSE SENTENCING MEMORANDUM - 7*

Ex. A, *Dr. Lavid Report).*

Even with Mr. Lloyd's difficulties, he still has the support of those who know him well:

Notably is his friendship with Stefanie Stratford, a woman who is confined to a wheelchair and reliant on a ventilator to breathe. Mr. Lloyd and Ms. Stratford have known each other for seven years. Mr. Lloyd has assisted Ms. Stratford and is a close confidant of hers as Ms. Stratford represents:

> "Anthony has the most loving and protective heart I ever met. I know he will always protect me and have my back. Anthony encourages me to do things I never thought I would be able to. I'm incredibly lucky to have him as my best friend and I know he'll always be there for me. He changed my life for the better and can never thank him enough." (Ex. B, *Stratford Letter).*

His longtime friend, Ligia Alvarez Odio, whom Anthony has known for his entire life:

> "Anthony is the kind of person that is always willing to help. In the last few years, some of my family members have been seriously ill and Anthony has offered countless times to help however he can. Has been willing to do errands, give rides and even babysit if necessary. He is a very loyal friend and a very trustworthy person. (Ex. B, *Alvarez Odio Letter).*

From longtime friend Tara South:

> "I truly believe Anthony's wrongful action represents a mistake he would never repeat. He has shown this by abstaining from any drug or alcohol use. He regularly attends substance abuse counseling and anger management counseling. Anthony is a loving friend, grandson and conscientious citizen." (Ex. B. *South Letter).*

Mr. Lloyd's grandmother with whom Mr. Lloyd resides was unable to provide a letter, but she reported to the USPO that:

> "[Mr. Lloyd] has a kind heart and is a giving person. He has been a strong source of support for her since her husband and her daughter's passing. Lloyd helps Anna Mare with various basic needs including grocery shopping, cleaning the house, and driving her to medical appointments. Anna Marie also relies on Lloyd for emotional support." (PSR 63).

## III. COOPERATION AND ACCEPTANCE OF RESPONSIBILITY

Despite his intoxicated, diminished and impaired state. Mr. Lloyd immediately

*DEFENSE SENTENCING MEMORANDUM - 8*

appreciated the severity of his conduct in making the threat towards Congresswoman Waters.

When the FBI came to his residence to initially interview Mr. Lloyd, he readily admitted making the phone call to Ms. Waters and that he felt like an "idiot" for doing it. (PSR 17(c)).

After his initial appearance and release on bond in this case, Mr. Lloyd disclosed to pretrial services that he had a serious issue with addiction and agreed to enroll in mental health and substance abuse counseling. (PSR 95, 96).

Mr. Lloyd pleaded guilty to the charge in this case at the earliest possible opportunity.

Most importantly, are Mr. Lloyd's words:

> "I take full responsibility for making a threat towards Congresswoman Waters. I sincerely apologize to her, her family, her staff and their families for my actions and for any fear my actions caused. This was an impulsive, incredibly thoughtless act.
>
> What I did had nothing to do with Ms. Waters. This was all about my own frustration and anger with not treating my addiction and mental health, becoming far too immersed in listening to polarizing political commentators and engaging in heated political debates online. This does not excuse my actions. I alone take responsibility my conduct.
>
> Since my arrest in this case, I have dedicated myself to maintaining sobriety, engaging fully in the court ordered mental health counseling, and after a long period of unemployment, I am once again working. I received my casual Longshoreman's card and I am working as many shifts as possible.
>
> I do not expect to be rewarded for maintaining sobriety, mental health counseling and working. My only hope is to show the court and the community that I am doing everything possible to address the root causes of this terrible conduct and I will continue to do so."

## IV.   SERIOUSNESS OF THE OFFENSE, RESPECT FOR THE LAW, AND JUST PUNISHMENT

Under 18 U.S.C. § 3553(a)(2)(A) the sentence imposed must adequately reflect the seriousness of the offense, ... promote respect for the law, [or] provide just punishment for the offense. 18 U.S.C. §3582(a) provides relevantly that a sentencing court "in determining whether

*DEFENSE SENTENCING MEMORANDUM - 9*

to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553 (a) to the extent that they are applicable, recognizing that lengthening a term of imprisonment is not an appropriate means of promoting correction and rehabilitation. *Tapia v. United States,* 131 S.Ct. 2382, 2390 (2011).

 "The need for the sentence imposed is determined by the seriousness of the offense, promotion of respect for the law, the need for a just punishment, general and individual deterrence, and the needs of the defendant. 18 U.S.C. §3553(a)(2)." *United States v. Myers*, 353 F. Supp 2d 1026, 1031 (S.D. IA 2005). "Punishment should not be more severe than necessary to satisfy the goals of punishment." *United States v. Moreland*, 366 F. Supp 2d. 416, 422 (S.D. W. Va. 2005) (affirmed in part, vacated in part and remanded *by United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006) (Moreland v. United States, 126 S. Ct. 2054 (2006)).

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035 (1996.) Mr. Lloyd is one of those "unique stud[ies] in human failings" and he will live with the shame of this conviction for the remainder of his life. He will be punished far beyond any sentence that is imposed for a thoughtless act committed by an otherwise "law abiding citizen, who [did] an incredibly dumb thing." *United States v. Hadash*, 408 F.3d 1080, 1084 (8th cir. 2005).

There is certainly no excuse for making threats against elected officials and no excuse for using racial slurs or slurs against the LGBTQ community. Yet given the spontaneous nature of the phone call Mr. Lloyd made to Ms. Waters office, given the fact that it was rooted in Mr.

*DEFENSE SENTENCING MEMORANDUM - 10*

Lloyd's mental illness and substance abuse, given the fact that Mr. Lloyd had no intent to carry out any harm against Ms. Waters, a probationary sentence is appropriate.

Anthony Lloyd's conduct not only victimized Ms. Waters, her family and her staff, not only was it a detriment to the community, but it will brand him as a convicted felon for the rest of his life, with all the deprivations attached to that status. Mr. Lloyd cannot undue what he has done, yet he has made tremendous progress since his arrest in this case and during the period of pretrial supervision. He can continue to show through his actions that he can continue to be rehabilitated and remain a productive member of the community.

## V.    CONCLUSION

Under the circumstances of this case, Mr. Lloyd respectfully asks this court to impose a statutory variance of a non-custodial three-year probationary sentence with a period of location monitoring and continued mental health counseling.

Respectfully Submitted,

S/Jerod Gunsberg_____
Jerod Gunsberg
Attorney for Anthony Lloyd

*DEFENSE SENTENCING MEMORANDUM* - 11